# EXHIBIT A

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

## 2013-1459

_____

AZURE NETWORKS, LLC and
TRI-COUNTY EXCELSIOR FOUNDATION,

_Plaintiffs-Appellants_,

v.

CSR PLC and
CAMBRIDGE SILICON RADIO INTERNATIONAL, LLC,

_Defendants-Appellees_,

and

ATHEROS COMMUNICATIONS, INC. and
QUALCOMM INCORPORATED,

_Defendants-Appellees_,

and

BROADCOM CORPORATION,

_Defendant-Appellee_,

and

MARVELL SEMICONDUCTOR, INC.,
RALINK TECHNOLOGY CORPORATION (TAIWAN), and
RALINK TECHNOLOGY CORPORATION (USA),

_Defendants-Appellees_.

_____

Appeal from the United States District Court for the Eastern District of Texas
in case no. 11-CV-0139, Judge Michael H. Schneider.

———————————

## BRIEF OF PLAINTIFFS-APPELLANTS
## AZURE NETWORKS, LLC AND
## TRI-COUNTY EXCELSIOR FOUNDATION

———————————

ERIC M. ALBRITTON
MICHAEL BENEFIELD
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX 75606
(903) 757-8449

MICHAEL E. JOFFRE
ANNA D. MAYERGOYZ
KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

DANNY L. WILLIAMS
CHRISTOPHER N. CRAVEY
WILLIAMS, MORGAN & AMERSON, P.C.
10333 Richmond Avenue, No. 1100
Houston, TX 77042
(713) 934-7000

August 20, 2013

*Counsel for Plaintiffs-Appellants Azure Networks, LLC and
Tri-County Excelsior Foundation*

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Azure Networks, LLC, and Tri-County Excelsior Foundation certifies the following:

1. The full name of every party or *amicus* represented by me is:

Azure Networks, LLC

Tri-County Excelsior Foundation

2. The name of the real party in interest represented by me is:

Azure Networks, LLC

Tri-County Excelsior Foundation

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus curiae* represented by me are:

Not applicable.

4. The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court are:

Michael E. Joffre
Anna D. Mayergoyz
KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel:  (202) 326-7900
Fax:  (202) 326-7999

Eric M. Albritton
Michael Benefield
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX 75606
Tel:  (903) 757-8449
Fax:  (903) 758-7397

Debra Coleman
Matthew Clay Harris
Stephen Edwards
Formerly with
ALBRITTON LAW FIRM

Danny L. Williams
J. Mike Amerson
Christopher N. Cravey
Matthew R. Rodgers
Brian K. Buss
David K. Wooten
David W. Morehan
Leisa T. Peschel
WILLIAMS, MORGAN &
  AMERSON, P.C.
10333 Richmond Avenue, No. 1100
Houston, TX 77042
Tel:  (713) 934-7000
Fax:  (713) 934-7011

T. John Ward, Jr.
Jack Wesley Hill
WARD & SMITH LAW FIRM
P.O. Box 1231
1127 Judson Road, Suite 220
Longview, TX 75606
Tel:  (903) 757-6400
Fax:  (903) 757-2323
(withdrawn from district court case)

Dated:  August 20, 2013

 */s/ Michael E. Joffre*

Michael E. Joffre

*Counsel for Plaintiffs-Appellants
Azure Networks, LLC and Tri-County
Excelsior Foundation*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ............................................................................. i

TABLE OF CONTENTS..................................................................................... iii

TABLE OF AUTHORITIES ................................................................................v

STATEMENT OF RELATED CASES ..................................................................x

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF THE ISSUES...........................................................................2

INTRODUCTION ...............................................................................................3

STATEMENT OF THE CASE..............................................................................4

STATEMENT OF FACTS ....................................................................................6

    A.    U.S. Patent 7,756,129...........................................................................6

    B.    The Exclusive License........................................................................12

    C.    The Accused Products .......................................................................14

    D.    The District Court Proceedings ..........................................................15

SUMMARY OF ARGUMENT .............................................................................18

ARGUMENT ......................................................................................................20

I.      STANDARD OF REVIEW ..........................................................................20

II.     TRI-COUNTY HAS STANDING BASED ON ITS
        INTEREST IN THIS LITIGATION AND ITS OWNERSHIP
        OF THE '129 PATENT ..............................................................................20

        A.      The District Court Erred in Finding That the License Is an
                Assignment .......................................................................................21

        B.      Even If the License Were an Assignment, Tri-County Retains
                Sufficient Rights To Join Suit with Azure ..........................................35

III.    THE DISTRICT COURT IMPROPERLY LIMITED
        THE TERM "MAC ADDRESS" TO LOCALLY GENERATED
        ADDRESSES ...........................................................................................38

        A.      The Ordinary Meaning of "MAC Address" Includes Locally
                and Universally Assigned Addresses ..................................................40

        B.      The Patentee Did Not Redefine the Technical
                Term "MAC Address" ......................................................................45

        C.      The District Court Erred by Importing a Limitation from
                the Specification ...............................................................................48

CONCLUSION ....................................................................................................51

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

iv

Tri-County is a proper plaintiff in this action and should not have been dismissed.

## III.    THE DISTRICT COURT IMPROPERLY LIMITED THE TERM "MAC ADDRESS" TO LOCALLY GENERATED ADDRESSES

The term "MAC address" is widely used in network technology to denote the address that uniquely identifies a device or group of devices on a shared communication medium.  MAC addresses are defined in IEEE specifications and are used by everything from wireless routers, to smartphones, to Bluetooth headphones.  The term carries that well-known meaning not only in industry literature, but in numerous prior art references cited to the examiner during prosecution of the '129 patent.  And the network described in the '129 patent uses MAC addresses in the same manner as the prior art—as a unique physical address that identifies a device on the network.   The language in other claims further reinforces that understanding.  The district court nonetheless required that the MAC address in the patent claims must be "generated by the hub device"—despite the fact that this requirement is found nowhere in the patent, the prior art, or the IEEE specification.  The district court's conclusion was based on two errors.

First, the district court mistakenly determined that the patentee acted as a lexicographer to give a special definition to "MAC address," even though the specification contains no express definition of the term.  Furthermore, the district court did not identify any statement having "reasonable clarity, deliberateness, and

precision sufficient to narrow the definition of the claim term in the manner urged." *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003). Rather, the district court based its decision entirely on the fact that the patentee expanded "MAC address" as "Media Access address" rather than "Media Access Control address."

Second, finding no express redefinition of MAC address, the district court cobbled one together by considering how MAC addresses were used in several exemplary embodiments in the specification. The result is that the district court improperly imported limitations from the specification's preferred embodiments to require that the MAC address must be "generated by the hub device." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"). In doing so, the district court excluded the most prevalent form of MAC addresses in the electronic industry—universal MAC addresses that are assigned to a device at the time of manufacture. This restriction is particularly problematic because the prior art acknowledges that the '129 patent and the IEEE's standards for wireless networks that use MAC addresses have *a common source*: BBN's BodyLAN project. A5786.

39

### A. The Ordinary Meaning of "MAC Address" Includes Locally and Universally Assigned Addresses

MAC addresses are used throughout wireline and wireless networks to denote a particular way to uniquely identify the physical devices on the network. The term "MAC address" was coined by Xerox during early work on networking and has been defined in specifications put forth by the IEEE ever since. *See* A1604-07; *see also Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1376-77 (Fed. Cir. 2005) (referencing the district court's appropriate use of an IEEE publication to discern the ordinary meaning of a term). IEEE documents created around the priority date of the '129 patent describe MAC addresses as a set of numbers that uniquely identify a physical network device. A1604. The most common form of MAC address at the time was a string of 48 bits. *Id.* The IEEE envisioned that the MAC address would be transmitted to provide routing information for packets of data going through the network to specify the destination for each packet. A1608.

Critically, the IEEE provided that MAC addresses could be assigned to a network device either universally at the time of the device's manufacture or locally by the network. Within the first portion of the 48-bit address there is a "Universally or Locally administered (U/L) address bit . . . [which] indicates whether the address has been assigned by a local or universal administrator;" if the bit is set to zero, it is universally administered; if the bit is set to 1, "the entire

40

address (i.e., 48 bits) has been locally administered." A1605. The intrinsic evidence comports with this understanding of the term "MAC address."

First, the prior art cited on face of the '129 patent uses MAC addresses in a manner entirely consistent with the IEEE specification. *See Phillips*, 415 F.3d at 1317 ("the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent") (citation omitted). Specifically, the prior art discloses that MAC addresses may be used as unique addresses to identify the specific physical network device and that the MAC address would be found in the routing information for packets of data traveling through the network. *See*, *e.g*., A7450 (WO 00/68811 publication 5:7-10) ("In an Ethernet environment, address information in the header reflects a media access control (MAC) hardware address, which is an absolute value and not readily mapped to a user or host, which have a logical rather than physical address."); A3455 (U.S. Patent No. 6,115,390 14:24-29 ("the '390 patent")) ("The frame body [] is followed by a frame check sequence [] and preceded by a MAC header [] comprised of a one-byte frame control (FC) field [], a 2-byte frame duration field [], a 6-byte source MAC address [], a 6-byte destination MAC address [], and a 2-byte sequence control field [].").

Additionally, the cited prior art makes clear that the MAC address can be universal and pre-assigned or it can be temporary and defined by the local network.

41

For example, U.S. Patent No. 6,570,857 ("the '857 patent") describes the process of a hub device (the "master") providing temporary MAC addresses to other devices (the "slaves"): "When a parked slave wants to become active, it indicates this to the master, at which time the master allocates this slave a free, temporary MAC address." A3916 ('857 patent 4:30-35); A3918 ('857 patent 7:54-58) ("A slave that can be put inactive for a longer amount of time will enter the PARK mode. In this mode, a slave gives up the MAC address [], thereby making the MAC address [] available for assignment to another slave unit."). This prior art specifically refers to the IEEE specification for MAC addresses, making clear that this is not a unique definition of MAC addresses. *See* A3915 ('857 patent 2:5-7). U.S. Patent No. 6,574,266 ("the '266 patent") describes a similar temporary MAC address assigned to slave devices. *See* A3935 ('266 patent 10:39-44); *compare* A7450 (WO 00/68811 publication 5:7-10) (discussing MAC address with an absolute value for that hardware).

The '129 patent's specification also uses MAC addresses for the same purpose and in the same manner as the prior art. The '129 patent uses MAC addresses to uniquely identify each device in the network. *See* A0137 ('129 patent 3:60-62) ("The Hub [] uses MAC address to identify itself and the PEAs []."). The MAC address is included in the routing information for the data. *See* A0140 ('129 patent 9:1-10) (PEAs disregarding data if destined for a different MAC

42

address). This is done to allow the hub and PEAs to communicate over the network. *See* A0137 ('129 patent 3:64-66) ("The Hub [] combines a MAC address and a stream number into a token, which it broadcasts to the PEAs [] to control communication through the network [].").  In the examples provided in the specification, the hub selects the MAC address, which is one of the two possibilities contemplated by the IEEE specification. *See* A0141 ('129 patent 11:3-4).

This correlation between the use of MAC addresses in the '129 patent and the IEEE definition is no accident.  A prior art document cited by the '129 patent describes the development of the BBN BodyLAN project which resulted in the invention disclosed in the patent.  A5786.  This 2006 IEEE Workshop document notes that the BodyLAN was "a development that paved the way for today's IEEE 802.15." *Id*.  This same IEEE 802.15 working group promulgated standards for wireless networks based on the IEEE 802 specification, which defines MAC addresses as both dynamically and universally assigned.  A1605.  It is difficult to imagine better evidence that the MAC addresses commonly used in wireless networks and embodied in the IEEE specification are the same as those discussed in the '129 patent, given that they had common roots.

Finally, the claims' use of "MAC address" comports with the standard industry definition. *See Phillips*, 415 F.3d at 1314 ("Other claims of the patent in

question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.") (citation omitted).  The claims describe using MAC addresses to uniquely identify peripheral devices.  *See*, *e.g.*, A0142 ('129 patent claim 2) ("The method according to claim 1, wherein the first peripheral device identifier is based at least in part on a MAC address of the first peripheral device."); A0143 ('129 patent claim 43) ("wherein the hub device is configured such that a plurality of MAC addresses is capable of being used for identification in association with the first peripheral device").  Additionally, some claims specifically describe that the MAC addresses are assigned by the local network.  *See*, *e.g.*, *id.* ('129 patent claim 50) ("The hub device according to claim 48, wherein the link layer is responsible for assignment of the plurality of MAC addresses.").  But other claims—including those at issue in this case—do not specify how the MAC addresses are generated in the first instance.  For example, claim 2 states that "the first peripheral device identifier is based at least in part on a MAC address of the first peripheral device," without specifying the source of the MAC address.  A0142 ('129 patent claim 2).  The inclusion of the requirement that the MAC address is locally assigned in some claims and its omission in others suggests that MAC address has its standard definition—it encompasses both universal and locally generated addresses.  *See Saunders Grp., Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1336 (Fed. Cir. 2007) ("the inclusion of the 'pressure

44

activated seal' limitation in some claims and its omission from others, is a

sufficiently powerful indicator" that the claim term encompassed devices without

pressure active seals).

### B. The Patentee Did Not Redefine the Technical Term "MAC Address"

Despite the intrinsic evidence, the district court held that the patentee

redefined the term MAC address. The district court's sole reason for finding that

the patentee "acted as his own lexicographer," A0010, is because the '129 patent

states that, for the hub and PEAs, "[e]ach device is identified by a Media Access

(MAC) address." A0137 ('129 patent 3:31-32). In the prior art and industry

references, the acronym "MAC" is normally expanded to either "Media Access

Control" or "Medium Access Control." *See* A2776 (U.S. Patent No. 5,371,734

1:24 ("the '734 patent")) and A2781 ('734 patent 11:23-24) (using both expansions

for MAC); A1963 (same); A7450 (WO 00/68811 publication 5:7-13) (expanding

to "media access control"); A3454 ('390 patent 11:34) (expanding to "medium

access control").[12] Because the '129 patent, in a single instance, expands the

acronym as "Media Access address," the district court held that the '129 patent had

---

[12] Other technical literature expands "MAC address" as "Media Access address," as found in the '129 patent. *See*, *e.g*., A1974 (describing a NIC's 48-bit address as "its own media access address (MAC)"); A1978 (stating that "MAC Address prioritizes network devices by their Media Access Address (MAC address)").

therefore entirely redefined the term simply by dropping one word (control) when expanding out the acronym.

But to redefine a term of art having an established meaning, the patentee must set forth a definition "with reasonable clarity, deliberateness, and precision" in the specification. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). To that end, any redefinition must be sufficiently clear to put a reasonable competitor on notice that the patentee intends to depart from a term's ordinary meaning. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005); *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1327 (Fed. Cir. 2001) ("[A] patentee is free to be his own lexicographer, so long as the special definition of a term is made explicit in the patent specification or file history.").

But here, the patentee did not provide *any* definition of MAC address. Put another way, the patentee never announced what MAC address means. The reason is clear. He was simply using the definition of MAC address that was employed by people in his field. In any event, when a patent does not contain any definition of a term, it is difficult to see how the patentee could have redefined the term with "clarity, deliberateness, and precision."

The appellees may argue that the unorthodox expansion of MAC address signaled that the patentee intended an "implied" redefinition of the term. But this argument fails as well. An "'implied' redefinition must be so clear that it equates

46

to an explicit one." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012). Thus, this Court has only found implicit redefinitions where, for example, the patentee stated in the "Description of the Invention" that a term was "defined below" and then used the term in examples, *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339-40 (Fed. Cir. 2004), or where the patentee expressly makes a description of a term "applicable to 'all embodiments of the present invention,'" *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001). There is no such clear statement in the '129 patent. On the contrary, the patentee makes no statement about the definition of "MAC address," and the specification continually emphasizes that it is disclosing only "exemplary" embodiments. *See*, *e.g.*, A0138 ('129 patent 5:9-12, 30-34) (describing MAC addresses in an "exemplary diagram of a software architecture").

The mere fact that the patentee dropped the word "control" when expanding the acronym does not demonstrate a redefinition of the term. Here, the '129 patent uses MAC address in the same way as the cited prior art and the IEEE specification, suggesting that the MAC addresses in the '129 patent are the MAC addresses used throughout the field. The fact that the inventor dropped a word in expanding "MAC address" at one point in the specification does not suggest a redefinition of the term.

Finally, the appellees previously argued that the patentee's use of Media Access rather than Media Access Control is significant because the patentee used the term contrary to how it was customarily used in the art—as an address that can only be assigned to a device at the time of manufacture. First, this is factually inaccurate. As described above, people in the art appreciate that MAC addresses can be universal or locally defined. Moreover, the appellee's argument is logically flawed. The appellees argue that the term "MAC address" should be limited by the embodiments in the specification because the patentee specially redefined the term MAC addresses. It is circular to argue that the patentee redefined the term MAC address due to the use of those MAC addresses in the embodiments.

## C. The District Court Erred by Importing a Limitation from the Specification

Having incorrectly held that the patentee redefined the term "MAC address," the district court compounded its error by drawing a new definition for that term from the MAC addresses described in specific embodiments. Because the exemplary embodiments all use a locally defined MAC address, the district construed the term to require that the addresses be "generated by the hub." A0011.

As an initial matter, the district court erred "simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history" to support a specialized meaning of "MAC address." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *see also*

48

*Thorner*, 669 F.3d 1362 at 1368 (giving a term its ordinary meaning because "disclosing embodiments that all use the term the same way is not sufficient to redefine a claim term"); *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010) (refusing to give special definition to a term because "[a]lthough the preferred embodiment includes a backplate that contains a tube joint, we do not generally limit claims to the preferred embodiment").

While the district court couched its decision as determining the patentee's special definition for the term "MAC addresses," it was doing nothing more than committing "one of the cardinal sins of patent law—reading a limitation from the written description into the claims." *SciMed Life Sys.*, 242 F.3d at 1340. This is clear because each citation that the district court relied on is described as "another implementation" or an "exemplary embodiment." *Compare* A0010 (relying on '129 patent 11:2-3; 11:55-57; 12:22-24) *with* A0140 ('129 patent 10:43-12:39) (section entitled "Exemplary Attachment Processing"); *compare* A0011 (relying on '129 patent 1:64-67; 2:2-3) *with* A0136 ('129 patent 1:62-2:6) (describing the method contained in the paragraph as "another implementation consistent with the present invention"). Properly understood, these statements merely describe specific examples and implementations of the invention rather than the invention itself. *See C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole, rather than

statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term."). Indeed, this is clear because the '129 patent nowhere describes *how* the hub generates MAC addresses. If a key feature of the invention were the generation of uniquely defined MAC addresses—as the appellees maintain—it would seem likely that the specification would have actually described it. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("[E]ven where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope. . . .") (internal quotation marks and citation omitted). Nor does the patent specification ever state—much less emphasize—that universal MAC addresses cannot be used. *See Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (considering whether "the very character of the invention" requires the limitation to be read into the claims).

*     *     *

In sum, the term "MAC address" has a well-understood meaning in the art that is entirely consistent with the intrinsic evidence in '129 patent. The district court should not redefine the term, and it certainly should not have done so based on exemplary embodiments.

## CONCLUSION

This Court should reverse the district court's order dismissing Tri-County and vacate the judgment of non-infringement based on the district court's erroneous construction of the claim term "MAC address."

Respectfully submitted,

*/s/ Michael E. Joffre*

| | |
|---|---|
| ERIC M. ALBRITTON | MICHAEL E. JOFFRE |
| MICHAEL BENEFIELD | ANNA D. MAYERGOYZ |
| ALBRITTON LAW FIRM | KELLOGG, HUBER, HANSEN, |
| P.O. Box 2649 | TODD, EVANS & FIGEL, P.L.L.C. |
| Longview, TX 75606 | 1615 M Street, N.W., Suite 400 |
| (903) 757-8449 | Washington, D.C. 20036 |
| | (202) 326-7900 |

DANNY L. WILLIAMS
CHRISTOPHER N. CRAVEY
WILLIAMS, MORGAN & AMERSON, P.C.
10333 Richmond Avenue, No. 1100
Houston, TX 77042
(713) 934-7000

August 20, 2013

**Counsel for Plaintiffs-Appellants Azure Networks, LLC and
Tri-County Excelsior Foundation**